**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| JANE MEAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 09-cv-584-P-S |
| | ) |
| INDEPENDENCE ASSOCIATION, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER ON MOTIONS TO DISMISS**

Before the Court are the Motion to Dismiss by Defendant Independence Association (Docket # 8) and the Motion to Dismiss by Defendants Christine Braden and Catherine Cobb (Docket # 6). As explained herein, the Court GRANTS the Motions and DISMISSES Plaintiff's Complaint.

**I.   LEGAL STANDARD**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the "legal sufficiency" of a complaint. Gomes v. Univ. of Me. Sys., 304 F. Supp. 2d 117, 120 (D. Me. 2004). The general rules of pleading require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation and alteration omitted). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at

1

570). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation omitted).

The Court must accept as true all well-pleaded factual allegations in the Complaint and draw all reasonable inferences in Plaintiff's favor. Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). In distinguishing sufficient from insufficient pleadings, which is "a context-specific task," the Court must "draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

## II.     FACTUAL BACKGROUND

Defendant Catherine Cobb is the director of the Division of Licensing and Regulatory Services at the Maine Department of Health and Human Services ("DHHS"). Defendant Christine Braden is a licensor working under Cobb for DHHS. Among other tasks, DHHS license and monitors Residential Care Facilities that provide assisted housing services for individuals suffering from mental retardation and incapacitation.

Defendant Independence Agency ("IA") is a non-profit organization that operates a number of Level I and Level III Residential Care Facilities. Plaintiff Jane Mead was employed as the Residential Services Director for IA and, in that capacity, served as the administrator for IA's fifteen Residential Care Facilities. Residential Care Facilities are licensed by DHHS and the administrator of each facility must be approved in writing by DHHS.

On March 6, 2009, Defendant Braden conducted an unannounced survey at IA's Goldeneye Residence. The survey revealed issues with an employee ("SF") who had been abusing controlled substances and providing inadequate supervision of the facility's residents. Plaintiff was the administrator of the Goldeneye Residence but was not present at the facility when the survey was conducted. On March 11, 2009, Plaintiff spoke with Braden in conjunction

with the survey. During this conversation, Braden accused Plaintiff of poor supervision with respect to SF. Plaintiff was not given an opportunity to explain her role in the handling of SF's substance abuse issues and her employment situation.

On April 7, 2009, Defendant Cobb sent a Directed Plan of Correction ("Plan") for the Goldeneye Residence to IA.[1] The Plan was based on a Statement of Deficiencies ("Statement") prepared by Braden on March 6, 2009. The Statement alleged that Plaintiff had "failed to take steps to address [SF's] behavior or otherwise terminate" SF's employment. (Compl. (Docket # 1) ¶ 58.) The Plan concluded that Plaintiff was not forthcoming with information related to the troubled employee and required IA to replace Plaintiff as administrator of the Goldeneye facility within one month. The Plan stated that IA was entitled to appear before an impartial hearing officer if it wished to challenge the allegations in the Statement of Deficiencies or any provisions of the Plan. Plaintiff asked IA to appeal the Statement and the Plan, and prepared a detailed report outlining what she believed were the errors in the documents. IA's Board of Directors ("Board") decided not to appeal.

The Board hired an outside investigator to look into the handling SF's situation, including the findings contained in the Statement. The investigator found that there was a failure at several levels of management. He recommended that the Board ask Plaintiff for her resignation based on Plaintiff's poor working relationship with IA's president, the Plan's requirement that she be replaced as administrator of the Goldeneye facility, and management and communication issues

---

[1] Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to Plaintiffs' claim; or for documents sufficiently referred to in the complaint. When the complaint relies upon a document, whose authenticity is not challenged, such a document merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss. Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33-34 (1st Cir. 2001). Based on this exception, the Court has considered the Statement of Deficiencies and the Directed Plan of Correction for the Goldeneye Residence in ruling on the instant motions.

during the DHHS survey. On May 4, 2009, Plaintiff was notified by the Vice-President of the Board that she was being terminated based on the Statement and her handling of the SF situation. The Vice-President told Plaintiff that "she was put in a 'near impossible situation' by the circumstances relating to SF." (Compl. ¶ 65.) The Vice-President also informed Plaintiff that Plaintiff was being terminated, rather than IA's President, because the Plan called for her to be removed as administrator of the Goldeneye facility.

Following her termination, Plaintiff applied for administrative positions in DHHS funded facilities but "was not given further consideration for the open positions after she disclosed that she had been terminated by IA after a Directed Plan of Correction by DHHS required her to be removed from her position as administrator for the Goldeneye facility." (Compl. ¶ 70.) Plaintiff remained unemployed until October 13, 2009 when she took a part-time, entry level job for $13.00 an hour and no benefits.

## III. DISCUSSION

Plaintiff brings claims under 42 U.S.C. § 1983 against all Defendants (Counts I and II) alleging that she was terminated without due process. She also alleges that she was retaliated against pursuant to the Whistleblowers Protection Act, 26 M.R.S.A. § 831 et seq. (Count III). Additionally, Plaintiff brings common law claims of defamation (Count IV), breach of fiduciary duty (Count V), and breach of the duty of good faith and fair dealing (Count VI). Plaintiff asks the Court to declare that she was deprived of her rights, award back and front pay, and award other compensatory and punitive damages. Each of Plaintiff's claims will be addressed in turn below.

### A.  Plaintiff's Claims under 42 U.S.C. § 1983 (Counts I & II)

Plaintiff claims that she was terminated without due process in violation of 42 U.S.C. § 1983, which permits plaintiffs to seek redress for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C.A. § 1983. To succeed on a Section 1983 claim, a plaintiff must show that the alleged constitutional deprivation was caused by a person acting "under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." Id.

####     1.  Plaintiff's § 1983 claim against the Independence Agency

IA moves to dismiss Plaintiff's Section 1983 claim arguing that it was not acting under the color of law when it terminated Plaintiff.  IA is undisputedly a private, non-profit organization.  "It is only in rare circumstances that private parties can be viewed as state actors." Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005).  The plaintiff bears the burden of proving that the acts of a private entity constitute state action for the purposes of Section 1983. Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155 (1978).

Plaintiff alleges that IA was a state actor because "the operations of IA are funded by contracts with DHHS or by MaineCare and because DHHS licenses and heavily regulates the operations of IA."  (Compl. ¶ 82.)  However, it is well-settled that "government regulation, even extensive regulation, and the receipt of [public] funds, are insufficient to establish that a [private] entity acted under color of state law."  Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258 (1st Cir. 1994); see also Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (extensive regulation of nursing home did not convert it into state actor); Rendell-Baker v. Kohn, 457 U.S. 830, 840-43 (1982) (school that received ninety percent of its funding from public sources was not state actor).

Plaintiff also alleges that IA is a state actor because there is a "direct nexus between the discharge of Plaintiff without a hearing and state involvement." (Compl. ¶ 82.) A private organization may be found to be a state actor if there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)). "The purpose of this [close nexus] requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." Blum, 457 U.S. at 1004 (emphasis in original).

When analyzing allegations of state action, the Court begins "by identifying the specific conduct of which the plaintiff complains." American Manufacturers Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 51 (1999). In this case, Plaintiff complains that she was "discharged . . . from employment without the opportunity to appeal the Statement of Deficiencies and Directed Plan of Correction." (Compl. ¶ 81.) Thus, Plaintiff can succeed only if she had pled facts showing that her termination by IA without due process can fairly be treated as an act of DHHS.

Taking the facts pled in the Complaint as true, Plaintiff has failed to establish that IA's decision to terminate Plaintiff is attributable to DHHS. Plaintiff alleges that IA was a state actor because her "discharge as administrator of the Goldeneye Residence was mandated in the Directed Plan of Correction" and because "IA decided to terminate Plaintiff in significant part based on the DHHS Directed Plan of Correction." (Compl. ¶ 82.) However, "[s]tate approval of an action by a regulated entity does not constitute state action 'where the initiative comes from the private entity and not from the States' and the state 'has not put its own weight on the side of the proposed practice by ordering it.'" Tancredi v. Metropolitan Life Ins. Co., 316 F.3d 308, 313

(2d Cir. 2003); see also MacDonald v. Eastern Wyoming Mental Health Center, 941 F.3d 1115, 1118 (10th Cir. 1991) (no state action "[a]bsent any showing that the state directed, controlled, or influenced" the particular personnel decision).

Plaintiff has failed to allege sufficient facts to show that DHHS put its weight behind the decision to terminate Plaintiff. The Directed Plan of Action required only that IA replace Plaintiff as administrator of the Goldeneye facility. There was no requirement that Plaintiff be removed as administrator of IA's fourteen other facilities or that she be terminated. IA independently hired an investigator to look into DHHS's findings, and that investigator recommended that the Board seek Plaintiff's resignation. There is no allegation that DHHS had a role in hiring the investigator or in the decision-making process which resulted in Plaintiff's termination.

In Hadges v. Yonkers Racing Corporation, 918 F.2d 1079 (2d Cir. 1990), the defendant corporation denied the plaintiff's application for training privileges at their racing facility. The plaintiff sued the private corporation under Section 1983 arguing that the denial of privileges constituted state action because it was based, in part, on the state's prior revocation of the plaintiff's racing license. The Second Circuit held that there was a distinction between the state, who was acting as the regulator of the racing industry, and the private corporation, who was acting in its business interest. Although defendant's denial of training privileges was based in part on the state's suspension of plaintiff's license, there was no state action because the defendant "did not act at the behest of a State official." Id. at 1083.

In a similar case, Fitzgerald v. Mountain Laurel Racing, Inc., 607 F.2d 589 (3d Cir. 1979), the Third Circuit arrived at a different conclusion in holding that the denial of privileges by the private raceway was state action. However, in Fitzgerald, there was overlap in the

personnel of the state agency and the defendant corporation. Members of the state agency actually participated in the defendant corporation's decision to deny the plaintiff's privileges. The Court emphasized that "it is the [state's] participation in the challenged activity which is the critical factor in establishing state action, and not the mere approval of the [action]." Id. at 599 n.13.

The facts pled in this case are more similar to Hadges than Fitzgerald. There was no overlap between DHHS and IA's Board of Directors. IA made the independent decision to terminate Plaintiff without the participation of any employee of DHHS. Plaintiff's termination is not state action simply because it was based in part on the state-issued Directed Plan of Correction. See Hadges, 918 F.2d at 183.

Moreover, if the Court assumes that DHHS sufficiently influenced IA's decision to terminate Plaintiff so as to constitute state action, there is no allegation that it encouraged IA to terminate Plaintiff *without due process*, which is the constitutional violation alleged here. In Huggins v. Apperson, No. 94-2188, 1995 WL 649895, *4-5 (4th Cir. Nov. 6, 1995), a federal agency required a credit union's board of directors to suspend certain employees in order to retain their federally insured status. Acting on this mandate, the board secured the resignation of these employees without giving them prior notice or an opportunity to be heard on the underlying allegations. The Fourth Circuit held that the terminations did not constitute state action because the federal agency did not influence or encourage the credit union to deny the employees notice and an opportunity to be heard. The agency had given the credit union adequate time to afford the employees due process, and the credit union made the independent decision to terminate the employees without due process.

Similarly, IA was given a month to replace Plaintiff as the administrator and was given the opportunity to appeal the Statement and Plan. Plaintiff alleges that she requested an opportunity to appear before IA's Board to grieve her termination and that this request was denied. (Compl. ¶ 66.) There is no allegation, however, that DHHS influenced the denial of Plaintiff's request for a grievance. Because Plaintiff has failed to allege that the state was involved with her termination without due process, she has failed to state a claim against IA under Section 1983. See Estades-Negroni, 412 F.3d at 6-7 (finding no state action where complaint failed to allege that the state was involved in the defendant's decision which formed the basis for the constitutional violation); MacDonald v. Eastern Wyoming Mental Health Center, 941 F.2d 1115, 1118 (10th Cir. 1991) (plaintiff's termination from a private health-care facility was not state action because it was not "directed, controlled, or influenced" by the state).

Because Plaintiff has failed to allege adequate facts demonstrating that IA was a state actor for the purposes of Section 1983, Count II fails to state a claim upon which relief could be granted. Defendant's Motion to Dismiss is GRANTED with respect to Count II.

2. Plaintiff's claims against the State Defendants

Defendants Cobb and Braden move to dismiss Plaintiff's § 1983 claim against them (Count I) on the basis of qualified immunity. "Qualified immunity is a judge-made construct that broadly protects public officials from the threat of litigation arising out of their performance of discretionary functions." Bergeron v. Cabral, 560 F.3d 1, 5 (1st Cir. 2009). The qualified immunity analysis generally follows a two-step approach which asks: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009).

9

      a.    *Does Plaintiff's Complaint sufficiently allege a constitutional violation?*

Plaintiff alleges that she was deprived of a liberty interest without due process when she was terminated by IA based on the Directed Plan of Correction prepared by Defendant Braden and issued by Defendant Cobb. The specific liberty interest that she alleges was infringed was her right "to be free of substantial burdens in seeking employment in her chosen field." (Compl. ¶¶ 72-73.) Plaintiff alleges that the Statement and Plan "stigmatized" her and "placed a substantial, tangible burden on her rights and status under the law to pursue her chosen profession without the opportunity for a pre-deprivation hearing to challenge the accuracy of the Statement of Deficiencies and Directed Plan of Correction relating to her." (Id. ¶ 73.)

It is well-settled that defamation by a state actor does not necessarily transgress constitutional rights. See Paul v. Davis, 424 U.S. 693, 700-01 (1976) (establishing that no constitutional harm ordinarily occurs when a state employee engages in defamation). To show a constitutional violation, a plaintiff must establish that, "in addition to mere reputational injury, words spoken by a government actor adversely impact a right or status previously enjoyed under state law." Pendleton v. City of Haverhill, 156 F.3d 57, 63 (1st Cir. 1998). "The fact that a state accords protections to one's reputation by allowing one to bring a tort action does not create a legal status which is altered when the state is the alleged defamer." Aponte v. Calderon, 284 F.3d 184, 196 (1st Cir. 2002). This doctrine is commonly referred to as "stigma plus." See Pendleton, 156 F.3d at 63.

The majority of "stigma plus" cases involve government employees. In those cases, the loss of a government job or the right to pursue government employment typically constitutes the "plus" factor. See Doe v. U.S. Dep't of Justice, 753 F.2d 1092, 1109 (D.C. Cir. 1985) (noting that "stigma plus" cases typically involve the loss of government employment or "foreclosure of

10

the right to be considered for government contracts"); Velez v. Levy, 401 F.3d 75, 88 (2d Cir. 2005) (a typical "stigma plus" case involves the government both making the defamatory statement and imposing the "plus" by terminating employment). The First Circuit has held that "a violation of constitutional proportions under a 'stigma plus' theory exists only if, and to the extent that, the opportunities lost are government benefices denied as a result of governmental action." Pendleton, 156 F.3d at 63.

The Second Circuit has noted that, outside the loss of government employment, "it is not entirely clear what the 'plus' is." DiBlasio v. Novello, 344 F.3d 292, 301 (2d Cir. 2003). In this circuit, it is clear that the loss of a non-governmental job cannot constitute the "plus" factor. See Pendleton, 156 F.3d at 63 (loss of private employment is not a violation of constitutional proportions under a "stigma plus" theory). As discussed above, IA was neither actually nor functionally a state actor. Accordingly, Plaintiff's job was not a government benefice and her loss of that job cannot serve as her "plus" factor.

Alternatively, Plaintiff contends that the defamatory statements deprived her of future employment prospects and that this loss of liberty interest satisfies the "plus" requirement. The cases in which courts have held that a plaintiff's future employment prospects were so burdened by state action so as to satisfy the "plus" requirement involve much greater state action than is alleged here. For instance, in Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994), the case upon which Plaintiff principally relies in her briefing, the plaintiff alleged that her inclusion on the list of suspected child abusers infringed her liberty interest in future employment. At the time of the suit, the law required all potential employers to consult the registry of abusers before hiring, required the state to disclose plaintiff's status to anyone who inquired, and, should an employer decide to hire someone who was on the registry, required the employer to provide written

11

justification for that decision. The Second Circuit held that these "unique" legal requirements infringed plaintiff's liberty interest because it placed a "tangible burden" on her employment prospects which far exceeded that associated with a bad reputation. Id. at 1000-01.

The state involvement in Plaintiff's future employment prospects alleged in this case falls short of a constitutional violation. DHHS has not revoked Plaintiff's ability to serve as an administrator of a DHHS-licensed facility. In fact, the Plan required only that Plaintiff be replaced as an administrator for one of IA's facilities and did not affect her status as administrator of the other fourteen facilities. Thus, there is no state impediment to Plaintiff seeking future employment as an administrator for a DHHS-licensed facility.

Plaintiff alleges that she "has made applications for employment for administrative positions in DHHS funded programs for assisted care, but was not given further consideration for the open positions after she disclosed that she was terminated by IA after a Directed Plan of Correction by DHHS required her to be removed from her position as administrator of the Goldeneye Residence." (Compl. ¶ 70.) Taking this as true, it does not establish that the state has imposed a sufficient burden on her future employment so as to violate Plaintiff's liberty interest. Although the Statement and Plan is publicly available, there is no requirement that a potential employer consult these documents before hiring Plaintiff. Nor is a potential employer required to seek permission from the state before hiring Plaintiff or provide justification for their decision to hire Plaintiff.

The facts of this case are more akin to Drake v. Laboratory Corporation of America Holdings, 290 F. Supp. 2d 352 (E.D.N.Y. 2003). In Drake, the defendant failed to preserve the plaintiff's urine sample, which had tested positive for a prohibited substance. His positive drug test resulted in the loss of his private employment. The plaintiff alleged that his inability to

challenge the positive drug tests resulted in a stigma that prevented him from being able to obtain employment in his chosen field because all potential employers would be aware of his positive drug test. The court held that these allegations did not satisfy the "plus" prong of the "stigma plus" analysis. Id. at 362; see also Abramson v. Pataki, 278 F.3d 93, 103 (2d Cir. 2002) (plaintiff's allegation that defamatory statement deprived him of the ability to get a job at employer who had ninety percent of the market of his chosen profession did not satisfy "plus" factor).

At most, Plaintiff has established that the alleged defamatory statements contained in the Statement and the Plan diminish her employability. The Supreme Court has held that an individual's liberty interest is not infringed when defamatory statements make an individual "somewhat less attractive to some other employers." Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972). "Liberty is not infringed by a label of incompetence or a failure to meet a specific level of management skills, which would only affect one's professional life and force one down a few notches in the professional hierarchy." Munson v. Friske, 754 F.2d 683, 693 (7th Cir. 1985). The impairment on Plaintiff's future employment alleged here does not amount to a constitutional violation. See Perry v. F.B.I., 781 F.2d 1294, 1302 (7th Cir. 1986) (FBI did not infringe on plaintiff's liberty interest in future employment by conducting a routine investigation into possible criminal charges that included plaintiff and sullied his reputation); Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1269 (10th Cir. 1989) (newspaper articles that affected plaintiff's ability to solicit clients did not infringe on his liberty interest in future employment); Weeks v. City of Plano, No. 88 C 0518, 1988 WL 84743, *1 (N.D. Ill. Aug. 10, 1988) (plaintiff was not deprived of liberty interest because she was unable to get a job at any other gas station in town based on defamatory statements).

13

The Supreme Court has repeatedly stressed that Section 1983 is not intended to federalize state tort law. See, e.g., DeShaney v. Winnebago Cty. Dep't of Social Services, 489 U.S. 189 (1989); Paul, 424 U.S. at 701. Where, as here, "there is no indication that [the plaintiff has] lost any legal rights because of the alleged defamation by government actors," the plaintiff has not asserted a constitutionally protected interest in his reputation. Aponte, 284 F.3d at 196. Accordingly, Plaintiff has failed to plead facts sufficient to show that the state deprived her of a liberty interest.

B.   *Was the constitutional violation clearly established?*

Because the Court has held that Plaintiff's Complaint fails to state a First Amendment violation, Plaintiff has failed to satisfy the first prong of the qualified immunity analysis. However, in the interest of completeness, the Court will also address the second prong of the qualified immunity analysis—whether, assuming that a constitutional violation occurred, such right was clearly established.

"The 'clearly established' step is itself composed of two parts, which require the court to decide (1) whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates that right, and (2) whether in the specific context of the case, a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009) (internal quotation omitted). The first prong "addresses the status of the law at the time of the event in question, focusing on the clarity of the standard with respect to the asserted constitutional right." Id. The second prong "addresses the specific factual context of the case to determine whether a reasonable official in the defendant's place would have understood that his conduct violated the asserted constitutional right." Id.

Assuming that DHHS infringed on Plaintiff's liberty interest in future employment, Plaintiff has failed to establish that this constitutional violation was clearly established. "[T]he inquiry into whether a right is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." Whalen v. Mass. Trial Court, 397 F.3d 19, 27 (1st Cir. 2005). "When determining whether a reasonable [state actor] would have been aware of a constitutional right, we do not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues." McVey v. Stacy, 157 F.3d 271, 277 (4th Cir. 1998). "In order to show that a principle is clearly established . . . a plaintiff ordinarily must identify cases of controlling authority at the time of the incident or a consensus of cases of persuasive authority such that a reasonable [actor] could not have believed that his actions were lawful." Bergeron v. Cabral, 560 F.3d 1, 11 (1st Cir. 2009) (internal quotations omitted).

Plaintiff relies on the consent decree entered in Bouyea v. Nichols, No. 1:04-cv-28, as "clearly establishing" that employees of companies that contract with DHHS are entitled to a name-clearing hearing whenever the results of an investigation may interfere with their future employability. However, "a consent decree . . . cannot establish constitutional rights, and obviously it cannot *clearly* establish constitutional rights." Cagle v. Sutherland, 334 F.3d 980, 990 n.4 (11th Cir. 2003). "Such orders often place requirements on litigants that go beyond the minimum requirements of the Constitution." Id. at 886.

Plaintiff cites no case law, aside from the consent decree, showing that the constitutional violation here was clearly established. In evaluating whether a constitutional right was clearly established, "the court should take care to focus on the particulars of the case at hand." Bergeron, 560 F.3d at 11. Plaintiff admits that she is seeking relief under Section 1983 based on a "stigma plus" theory. As the Second Circuit has noted, outside the loss of government

15

employment, "it is not entirely clear what the 'plus' is." DiBlasio v. Novello, 344 F.3d 292, 301 (2d Cir. 2003). The leading First Circuit case on the "defamation plus" standard plainly states that the loss of private employment does not constitute the "plus" factor sufficient to sustain a cause of action under Section 1983. Pendleton, 156 F.3d at 63. Plaintiff has failed to cite controlling precedent showing that impairment of future private employment prospects, similar to those alleged in this case, are constitutionally sufficient. Accordingly, even assuming Plaintiff had adequately alleged a constitutional violation, Defendants Cobb and Braden would be entitled to qualified immunity because such violation was not clearly established. Thus, Defendant Braden and Cobb's Motion to Dismiss is GRANTED with respect to Count I.

### B. Plaintiff's State Law Claims

Plaintiff additionally brings claims under the Maine Whistleblowers Protection Act, 26 M.R.S.A. § 831 *et seq.*, as well as common law claims of defamation, breach of fiduciary duty, and breach of the duty of good faith. As discussed above, the Court has dismissed Plaintiff's claims under 42 U.S.C. § 1983, which were the only claims over which it had original jurisdiction. In the absence of any federal claims remaining after resolution of a motion to dismiss, the court must determine whether to entertain Plaintiff's state-law claims. See 28 U.S.C. § 1367(c)(3) (expressly authorizing a district court to decline the exercise of supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"); United Maine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"); Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995); Snowden v. Millinocket Reg'l Hosp., 727 F. Supp. 701, 710 (D. Me. 1990) (the Gibbs

doctrine "require[s] dismissal without action on the merits and without any exercise of discretion if all the federal claims in this suit are found to be, short of trial, deficient.").

The Court has broad discretion over the decision to exercise supplemental jurisdiction. Chungchi Che v. Mass Bay Transp. Auth., 342 F.3d 31, 37 (1st Cir. 2003). "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodriguez, 57 F.3d at 1177. "The factors that are supposed to guide the Court's consideration of whether to dismiss pendent claims include comity, judicial economy, convenience and fairness to the litigants." Kropp v. Maine Sch. Admin. Union # 44, Civil No. 06-81-P-S, 2007 WL 551516, at *20 (D. Me. Feb. 16, 2007). The Court has weighed these factors and has determined that the balance weighs in favor of declining supplemental jurisdiction. Accordingly, Counts III, IV, V, and VI of Plaintiff's Complaint are DISMISSED without prejudice.

## IV.  CONCLUSION

For the reasons explained herein, Defendants' Motions to Dismiss (Docket #s 6 & 8) are GRANTED. Counts I and II of Plaintiff's Complaint are hereby DISMISSED WITH PREJUDICE. Counts III, IV, V, and VI are hereby DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

       /s/ George Z. Singal
       United States District Judge

Dated this 27th day of May, 2010.